KEYSTONE–FLEMING TRANSPORT, Inc.,
Appellant,

v.

CITY OF TAHOKA, Appellee.

No. 6394.

Court of Civil Appeals of Texas.

Amarillo.

May 10, 1954.

Rehearing Denied Sept. 27, 1954.

McWhorter, Howard, Cobb & Johnson, Lubbock, for appellant.

Calloway Huffaker & Harold Green, Tahoka, for appellee.

PITTS, Chief Justice.

This is a venue action that arose out of a property damage suit filed by appellee, the City of Tahoka, against appellant, Keystone-Fleming Transport, Incorporated, as a result of an alleged explosion from a fire then burning involving two trucks and semitrailers loaded with tanks of liquid gas, which explosion threw a part of an exploded tank into appellee's fire truck standing nearby and damaging the same. Appellant filed its plea of privilege seeking to have the suit transferred to Lubbock County, the county of its residence and where it had its principal place of business. Appellee timely filed its controverting affidavit, alleging venue in Lynn County under the provisions of Subdivisions 9 and 23 of Article 1995, Vernon's Revised Civil Statutes, and the venue issue was heard without a jury by the trial court, which overruled the plea of privilege and an appeal has been perfected from such order.

The record does not reveal when appellee filed its original petition but its first

amended petition was filed on August 19, 1953, and the issues were heard under the venue statute before Subdivision 9 thereof was amended by the 53rd Legislature in 1953. The said amended petition was made a part of appellee's controverting affidavit. Appellee there pleaded that appellant was engaged in selling and transporting by trucks butane throughout West Texas; that while making deliveries of such butane, two of appellant's trucks, while both were travelling east on a public highway, collided as a result of some sort of negligence of one or both operators of the trucks causing an explosion and a hazardous fire on the highway about six miles west of Tahoka; that the collision could not have occurred in the absence of negligence of one or both truck operators; that the Tahoka City volunteer fire chief and his volunteer firemen went to the scene of the fire to render aid when and where another explosion of the burning trucks occurred which resulted in damages done in the sum of $6,000 to appellee's fire truck; that the said trucks, trailers and tanks loaded with liquid gas were in the exclusive possession, control and management of appellant at the time of the original fire and that the subsequent explosion, which damaged appellee's fire truck, was the proximate result of the original collision and fire. Appellee alleged no specific acts of negligence and further alleged that it did not know the specific acts of negligence the employees of appellant were guilty of but that its damage as a result of the fire and explosion could not have occurred in the absence of negligence on the part of one or both of appellant's employees; that such negligence was a direct proximate cause of appellee's damages; that the negligence of appellant's said agents constituted a trespass and a crime committed in Lynn County within the meaning of Subdivision 9 of Article 1995 while they were engaged within the scope of their employment.

The record reveals that two of appellant's employees were operating two 5-ton trucks with semitrailers attached thereto carrying dual tanks of a water capacity of 2,500 gallons each, loaded with liquid gas when a fire occurred about one or two o'clock early in the morning of April 26, 1953, on a public highway about 6 miles west of Tahoka, Lynn County, Texas, which resulted in the death of the drivers of both trucks, considerable damages done to appellant's trucks as well as to appellee's fire truck, which was voluntarily brought to the scene of the fire in an effort to be of assistance. According to the record no eyewitness survived or was present at the scene of the fire to relate from observation what happened or how such occurred.

The record reveals that by stipulation the parties agreed that the two trucks with semitrailers attached were owned by appellant at the time of the accident and that each of the trucks was being then operated by an employee of appellant at the time of the original fire. Only two witnesses testified at the trial, namely, J. W. Clinton, chief of the volunteer fire department of Tahoka, appellee herein, and J. C. Fleming, secretary-treasurer of Keystone-Fleming Transport, Incorporated, appellant herein, both having been called and placed on the witness stand by appellee. Clinton testified that he, upon notice of the fire, drove alone to it in his own automobile where he found Tom Hale, a deputy sheriff, and somebody else there to whom he paid no attention. He there found both trucks on fire and fire everywhere covering both trucks. One truck was clear of the road on one side and the other one on the other side. The highway runs east and west, was straight for some distance and the ground thereabouts was level. One truck with trailer attached thereto was off the pavement on the north side with the front end further from the pavement than the back end. The other truck was on the opposite side of the road from the first truck and a little east from it with its trailer torn loose and turned bottom side up. Both trailers had dual tanks on them. The front end of the right-hand tank on the north side of the road was caved in and the back end of the left-hand tank on the south side of the road was caved in. From his observance

of the tanks Clinton further testified over appellant's objections that he formed an opinion that the two trucks were caved in because they had run together or had collided with each other. Clinton further testified that Tom Hale, deputy sheriff, communicated to town with his two-way radio, through which communication something was said about a body being in each truck. The fire truck came with 8 or 10 volunteer firemen and Clinton directed that the fire truck be placed across the road about 250 feet east of the burning trucks. The firemen pulled the fire hose, hooked it together, pulled it to the burning truck on the south side of the road and turned water on it to cool the truck off in order to see if there was anybody in the cab but nobody was found in the cab. The other truck was too far gone to try to rescue anybody in it. The witness and the other firemen then returned to the fire truck to roll up the hose and move the truck when an explosion occurred that damaged the fire truck very much but the witness could not tell just what happened. From the looks of things it appeared to him that the end of one of the tanks that exploded hit the fire truck and then stopped 1,700 feet from the point of explosion. Clinton testified further that he had never received any instructions concerning fighting fires from anyone and that he did not know at that time that pouring water on a "popping off" butane or a propane tank would likely cause an explosion but that he "now knows it"; that, although water was put on the cab, no water was poured on the truck that was popping off and exploded as the truck that was popping off was about 75 feet from the cab they were pouring the water on. Clinton further testified that he and the other men were volunteer firemen and drew no pay for their services from the City of Tahoka.

J. C. Fleming testified that he was secretary-treasurer of Keystone-Fleming Transport, Incorporated, appellant; that appellant's employees, Cecil Collier and another boy whose last name was Jenkins, were operating the trucks in connection with appellant's business of delivering butane and propane gas; that each truck used had a "pop off valve" which worked automatically in case of an emergency; that the said employees were night drivers and usually began operating the trucks at 7 or 8 o'clock in the evening; that he was in San Antonio when the accident occurred, but heard of it and returned home that day; that he did not at any time go to the scene of the accident but began at once to make an investigation about the matter; that he saw the trucks and tanks at Lubbock after the explosion and fire and that he formed an opinion about the matter based strictly on hearsay; that there were two trucks with the heads caved in and one tank was swollen in the center and had ruptured a bit; that another tank was ripped completely apart and another one had collapsed completely; that he could not tell which truck any of the tanks belonged to after they had all been moved to Lubbock from the scene of the fire; that according to what he heard as a result of his investigation upon his return after the fire, there were two explosions and he gathered that the first explosion was caused by a collision of the two trucks which ruptured the tanks and caused a fire and that the other explosion occurred after the fire truck arrived and that explosion was caused by the firemen pouring cold water on the hot tank, which exploded and caused a part of the tank to fly away "and hit the fire truck and then ricket off the truck"; that his investigation revealed that the "pop off valves" on the tanks were working after the original fire occurred and that the firemen present poured cold water on the hot tanks, causing the steel to crystallize, rupture and explode, which resulted in the damages done to the fire truck; that the said explosion would not have occurred or the fire truck have been damaged had the firemen not poured cold water on the hot tanks; that both truck drivers lost their lives as a result of the accident; that his investigation revealed that no surviving person saw what happened to cause the first explosion which resulted in the fire but it is supposed that the driver of the

front truck threw on his brakes and started to turn at a highway intersection and the other truck was following too closely behind to avoid a collision and ran into the front truck and that such would be his guess about the matter; that it looked as though the two trucks were damaged by such a collision, however such was only his supposition and he did not know what caused the damages; that he was the "over-all" manager of appellant's company but Pete Young was the transport manager who hired, fired and gave orders to the truck operators. This witness likewise gave other testimony concerning the "pop off valves" on the trucks, the purpose of such "pop off valves", the pressure of the tanks used at various temperatures and the damage done to the trucks and accessories, some of which testimony was very uncertain. He likewise gave speculative testimony about the trips these two trucks were making and the route they would have followed. All hearsay and speculative testimony given by this witness and offered by appellee was admitted over appellant's objections.

The foregoing is the material evidence upon which appellee relies to establish venue in Lynn County. The filing of a plea of privilege established appellant's prima facie right to have the suit transferred to Lubbock County and placed the burden of proof upon appellee to refute such prima facie right. Rule 86, Texas Rules of Civil Procedure. Rasberry v. Jones, Tex.Civ.App., 195 S.W.2d 947, and other authorities there cited; Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896. It is well settled that a venue challenge by a proper plea of privilege has placed the burden upon appellee to allege and prove that his venue action comes within one of the exceptions of the venue statute. Compton v. Elliott, 126 Tex. 232, 88 S.W. 2d 91; World Co. v. Dow, 116 Tex. 146, 287 S.W. 241; Benson v. Jones, 117 Tex. 68, 296 S.W. 865; Greenville Gas & Fuel Co. v. Commercial Finance Co., 117 Tex. 124, 298 S.W. 550. A defendant is entitled to be sued in the county of his residence, in the absence of any statutory exception. Moore v. Tucker, Tex.Civ. App., 14 S.W.2d 70. Exceptions to the privilege of a citizen to be sued in the county of his domicile must be strictly construed and clearly established. Spinnler v. Armstrong, Tex.Civ.App., 63 S.W. 2d 1071; Daniel v. Jones, Tex.Civ.App., 103 S.W.2d 437; Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062. A citizen may not lightly be deprived of the right to be sued in the county of his domicile. Amberson v. Anderson, Tex.Civ.App., 43 S.W.2d 120; Hausman Bros. Packing Co. v. Allen, Tex.Civ.App., 59 S.W.2d 246.

We find no evidence that would tend to establish that appellant maintained its principal office or had an agent in Lynn County, as provided for in Subdivision 23 of the venue statute. However, if appellee established a cause of action as alleged for venue purposes, such arose in Lynn County. In order to meet the requirements under Subdivision 9 of the venue statute, before it was amended in 1953, appellee must have established its alleged cause of action as a result of an active trespass or a crime committed in Lynn County by either one or both of appellant's said agents who were operating the trucks in question. Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770.

[5, 6] Appellee admits that it is relying upon the doctrine of res ipsa loquitur to establish liability upon appellant for damages done to its fire truck as a result of an explosion during the burning of appellant's trucks and trailers loaded with liquid gas on the occasion in question. Concerning the doctrine of res ipsa loquitur, meaning "the thing speaks for itself", it has been said:

" 'While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred.' To give rise to this presumption or inference, the evidence must show

"(1) that the injury or damage was the result of an act or omission of the defendant,

"(2) that an instrumentality by which the harm was caused or produced was in the exclusive possession of the defendant, and

"(3) that the calamity was one which is ordinarily averted by the taking of customary precautions or preventive measures. .

" 'Where the particular thing causing the injury has been shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' " 30 Tex.Jur. 802–803, Section 129, and authorities there cited.

The material facts upon which appellee relies for recovery under such doctrine are:

" * * * defendant owned two truck tractors with a semitrailer attached to each, on which such trailers were two 2500-gallon tanks containing either propane or butane (S.F. 4, 5, 6); that these trucks were being driven by employees of defendant (S.F. 4) and were on the way to make a delivery of such propane and butane to a customer (S.F. 10, 11) at the time in question: that the rear end of the left hand tank on the trailer being pulled by the first or lead truck and the front end of the right hand tank on the trailer being pulled by the second or following truck collided (S.F. 13, 14, 19, 35, 43, 44) and that an explosion occurred (S.F. 29) and a fire resulted (S.F. 35), that this fire caused the pressure in the tanks to build up and cause a second explosion (S.F. 36); that as a result of the fire, plaintiff's fire truck went to the scene (S.F. 36, 46), and was damaged as a result of the second explosion (S.F. 48)."

Except for ownership of the trucks, trailers and tanks, the capacity of the tanks, the operation of the trucks by appellant's employees at the time of the original fire and the damages done to appellee's fire truck as a result of an alleged explosion from the burning trucks, the remainder of the material facts relied upon by appellee are based upon hearsay, speculative, or presumptive evidence and guesses made over the strenuous objections of appellant's counsel by the witness who gave such testimony with one inference or presumption based upon another. It is a presumption or inference based upon speculative hearsay as to where appellant's truck drivers were going at the time of the accident and as to whether or not they were then engaged within the scope of their employment as pleaded by appellee. It is a presumption or inference as to how the accident occurred and particularly is it a presumption or inference that the two trucks collided with each other and another presumption or inference stacked thereon to the effect that such a collision caused an explosion and a fire and still another presumption or inference stacked thereon to the effect that such fire caused pressure in the tanks which resulted in what appellee refers to as "a second explosion" and finally another presumption or inference stacked thereon to the effect that the "second explosion" resulted in the damages done to appellee's fire truck. ·

▮▮▮. In the case of Miller & Miller Motor Freight Lines v. Hunt, Tex.Civ.App., 242 S.W.2d 919, this court held in a venue action that an inference of fact should not be drawn from premises which are uncertain, but the facts on which an inference may legitimately rest must be established by direct evidence as if they were the very facts in issue, and one presumption cannot be based on another presumption; that inferences can be drawn only from facts and not from other inferences and certainly one doubtful inference cannot be

drawn from another equally as doubtful. It was likewise held in the case of Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442, that one presumption or inference of fact cannot rest or be based upon another inference of fact. The courts have uniformly and consistently held that hearsay evidence cannot furnish a basis for establishing or refuting an alleged cause of action.

A party plaintiff may rely upon the doctrine of res ipsa loquitur for recovery in a cause of action properly pleaded but " 'the rule of res ipsa loquitur is not one of substantive law, but *is a rule of evidence only*.' * * * 'The doctrine involved contains no arbitrary or complex formulae, but is a simple rule of evidence depending upon sound sense and reason, and amounts to no more than this, that where the physical facts involved in an accident are of such a character as to compel an inference that it resulted from negligence, such facts are themselves evidence of negligence.' " Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 663.

"Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer." Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 969, 160 A.L.R. 1445.

" 'The rule of res ipsa loquitur has no application, where the thing causing the accident was not under the exclusive management of the master, but was partially under that of the injured party.' " Brigman v. Holt & Bowers, Tex.Civ.App., 32 S.W.2d 220, 222, writ refused.

The record reveals that in the case at bar a fire alarm was given to appellee's volunteer fire chief, who testified that he went immediately to the fire 6 miles west of Tahoka where he found two trucks on fire with fire everywhere all over both trucks and Tom Hale, a deputy sheriff, was there. Through the deputy sheriff's two-way radio, a communication was sent back to town, through which something was said about a body being in both trucks. When the fire trucks came, the witness (fire chief) directed that the truck be placed within 250 feet of the burning trucks, the hose pulled, hooked together and water was poured on one of the trucks to cool it off to see if there was anybody in the truck cab but nobody was in the cab. As the firemen were rolling up the fire hose, getting ready to move the fire truck, an explosion occurred, which the witness testified he could not explain but it appeared to him that "the end of one of the trucks that exploded hit the truck" and landed about 1,700 feet from the point of explosion. The record reveals that both of appellant's employees who were operating the trucks lost their lives as a result of this accident. There is evidence to the effect that something was said "about a body being in both trucks" in a communication the deputy sheriff had from town but nobody was found in the cab of one of the trucks and the other truck was not examined for a body. There is no evidence revealing that appellant's said employees were alive at the time of the alleged explosion which damaged appellee's fire truck or that either of them or any other agent or employee of appellant had any control or management whatever over the "thing causing the accident" which resulted in appellee's damage, to say nothing of having had the "exclusive management" of such. The evidence tends to establish that appellant's employees and agents did not have "management" of the trucks and other equipment at the time of the said alleged explosion but that appellee's fire chief had appeared on the scene and had at least taken partial control or management of the situation together possibly with a deputy sheriff. For these reasons under the au-

thorities cited the doctrine of res ipsa loquitur has no application in this action even if the factual situations relied upon were not based upon speculative hearsay evidence.

"* * * 'when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury.'

"And if the plaintiff would rest upon inferences rather than upon direct evidence, he meets the same rule. 'The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned, by this court and by other courts.' Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498." Bowles v. Bourdon, Tex., 219 S.W.2d 779, 785.

If the submission of such speculative choices to a jury must be condemned, certainly the choice of a trial court as the factfinder between two speculative choices must be likewise condemned. In the case at bar two speculative theories or guesses have been advanced as to the cause of the explosion which resulted in damages done to the fire truck. One speculative theory or guess was that the pouring of cold water on the hot tanks caused the steel to crystallize, rupture and explode; the other speculative theory or opinion was that intense heat alone from the original fire caused the explosion.

" 'Where the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another, plaintiff has not met the burden the law casts upon him.' " Miller & Miller Motor Freight Lines v. Hunt, supra [242 S.W.2d 923].

According to the record there were two distinct accidental occurrences,

(1) one occurred resulting in a fire which involved two of appellant's trucks and trailers loaded with liquid gas and which damaged appellant's said property and caused the death of both operators of the trucks;

(2) the other was an explosion which occurred sometime after the fire began and caused damage to appellee's fire truck.

The record does not disclose exactly when it was discovered that the truck operators had lost their lives, where their bodies were found or anything else other than they were operating the trucks and lost their lives as a result of the original accident. There was no eyewitness testimony as to the cause of the original fire and no conclusive physical facts were presented to show any particular cause of the original fire. The fire chief upon his arrival found the two trucks separated by the highway and both of them on fire. Appellee charged negligence but produced no evidence of any positive act of negligence on the part of appellant's employees. The evidence relied on is speculative, presumptive and hearsay. Appellee likewise failed to negative a reasonable probability that the injury complained of could have resulted from some cause other than the negligence of appellant's agents.

"The rule of res ipsa loquitur has no application in this case, for the additional reason that the evidence fails to negative a reasonable probability that the injury complained of resulted from some cause other than the negligence of the railroad company. Davis v. Castile (Tex.Com.App. [257 S.W. 870]). Appellee's liability cannot be predicated upon a mere guess, surmise, or presumption when it is equally reasonable to presume that the injury resulted from some nonactionable cause. Davis v. Castile, supra; Gulf,

C. & S. F. R. Co. v. Davis (Tex.Civ. App.) 161 S.W. 932." Hawthorne v. Texas & N. O. R. Co., Tex.Civ.App., 84 S.W.2d 1015, 1016.

"It is not enough under the res ipsa loquitur rule to fasten liability on one, any more than on the other simply because some accident and injury occurred. When all the facts connected with the occurrence fail to point to any particular act of negligence on the part of either party, as proximate cause of the injury, but merely show the state of affairs or some intervening circumstance from which an inference could reasonably be drawn that the injury was due to some cause other than the negligence of the defendant, the rule of res ipsa loquitur has no application. * * * 'Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one, rather than the other, produced it." Tuscany v. U. S. Standard Products Co., Tex.Civ.App., 243 S.W.2d 207, 209, and other authorities there cited.

Appellee has presented an unexplained situation showing two trucks standing across a highway from each other and each on fire without satisfactorily establishing what caused it. It may have been the result of an intervening cause, an unavoidable accident or an act of God. The record wholly fails to place appellant's agents in charge of the burning trucks and trailers after the original fire began. Neither does the record disclose by what authority the firemen took the fire equipment to the scene of the accident 6 miles outside of the City of Tahoka. It is not shown that the City of Tahoka was under any duty to furnish fire protection outside of its corporate limits.

Appellee relies to a great extent upon the case of Longacre v. Reddick, Tex.Civ.App., 215 S.W.2d 404, in support of its claims here made. That case is distinguishable from the one at bar in that the original accident in that case occurred in the presence of the injured party who saw the truck operator apparently unconscious and in distress when he rushed in and rescued the said operator and was personally injured as a result of an explosion of the truck and there sued for personal injury damages; in that case the occurrences all happened almost simultaneously; also there was a positive showing of defendant's negligence in that case. In the case at bar the injured party (City of Tahoka) was at least 6 miles from the original accident when it occurred; something was said to the fire chief, after he arrived at the scene and found both trucks on fire and burning all over, about a body being in each of the two trucks, implying that nothing was said about a live person being in distress in either truck; no act of negligence on the part of appellant has been here alleged or established; appellee sues here for property damages and there was a period of considerable time between the original fire and the occurrence that damaged the fire truck. In the Reddick case the injured party could see, evaluate and estimate the predicament of the truck operator, who was there, still alive in a position of imminent peril and went to his rescue. In the case at bar no such conditions existed. It seemed there may have been a rumor that there was a body in each truck but the record reflects no facts that would have impelled a conclusion that there was a live person in either truck as they both were burning furiously. The fire chief finally examined the cab of one truck but found no body or person therein.

■ In our opinion appellee has not offered satisfactory proof to establish negligence on the part of appellant's employees or to support its claim under the doctrine of res ipsa loquitur. We think appellee has wholly failed to establish an active trespass or a criminal violation on the part of appellant's agents. We also cite the cases of International-Great Northern R. Co. v. Lucas, 128 Tex. 480, 99 S.W.2d 297; Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636; Independent Eastern Torpedo Co. v. Carter, Tex.Civ.

App., 131 S.W.2d 125; Odom v. Parker, Tex.Civ.App., 173 S.W.2d 328.

For the reasons stated appellant's plea of privilege should have been sustained. The judgment of the trial court is therefore reversed and judgment is here rendered sustaining appellant's plea of privilege and ordering the cause of action transferred to the District Court of Lubbock County, Texas. Reversed and rendered.